■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ERROLL BECKFORD, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Kings County (Quinones, J.), rendered November 5, 1986, convicting him of criminal possession of a weapon in the third degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is reversed, on the law and as a matter of discretion in the interest of justice, and a new trial is ordered.

Responding to a radio transmission, a number of uniformed police officers arrived at a certain address and knocked on the door of a second-floor apartment. They heard no answer, but heard someone "rushing around" and a window open. Instantly, two of the officers ran to a third-floor apartment and entered the fire escape. One of the two, Officer Hyer, testified that he ran down the fire escape. He saw the defendant place a dark object which looked like a gun under an Astroturf carpet, located in the backyard of a neighboring house. Officer Hyer testified that he retrieved a gun from that spot as he and Officer Johnson chased the defendant. Officer Johnson testified that although she saw the defendant run through the backyard, she did not see him with a gun.

The testimony by Officer Hyer and Officer Gieschen that they responded to a radio transmission about a dispute with a gun constituted inadmissible hearsay *(see generally,* Richardson, Evidence § 200, at 176-177 [Prince 10th ed]), as did Officer Gieschen's testimony that a Lola Santos told him she lived in the defendant's apartment. The prosecutor also improperly asked the defendant on cross-examination at least twice

whether he knew that he was arrested because he threatened Lola Santos with a gun *(see,* Richardson, Evidence § 490, at 476 [Prince 10th ed]). These utterances impermissibly bolstered the testimony of the People's witnesses *(see, e.g., People v Downing,* 112 AD2d 24; *People v Tufano,* 69 AD2d 826).

The error was compounded by numerous prosecutorial improprieties. During cross-examination of the defendant, who asserted that he had been framed, the prosecutor persistently asked whether the People's witnesses lied *(see, People v Webb,* 68 AD2d 331). The prosecutor also improperly engaged in sarcastic questioning of the defendant, asking him twice whether the police chose "you out of the millions", thus, showing an "ill-concealed contempt for the defendant" *(People v Hicks,* 102 AD2d 173, 183). He also improperly engaged in persistent questioning of the defendant on collateral matters regarding the defendant's marital status, which tended to "impugn [the defendant's] character without being probative of the crime charged" *(People v Hicks, supra,* at 182). Further, the prosecutor's comments during summation were clearly improper. He said that he did not wish to insult the jury's intelligence as the defense counsel had done *(see, People v Fernandez,* 82 AD2d 922), that to believe the defendant was to believe that all the People's witnesses, the Judge and the District Attorney's office conspired against the defendant *(see, People v Stewart,* 92 AD2d 226), that the defendant's testimony "couldn't possibly be true" and was "beyond belief" *(cf., People v Bailey,* 58 NY2d 272), and that the police would not put their jobs on the line in trying to frame the defendant *(see, People v Hernandez,* 128 AD2d 637, *lv denied* 70 NY2d 648). Although objection was not made to most of these utterances, we hold that in the interest of justice the cumulative effect of the errors deprived the defendant of a fair trial, since the evidence of guilt was not overwhelming *(see, People v Bailey, supra,* at 278).

The defendant's remaining contentions have been considered and have been found to be without merit *(see, People v Buford,* 69 NY2d 290; *People v Gonzalez,* 68 NY2d 424; *People v Walker,* 105 AD2d 720; *People v Marcelin,* 23 AD2d 368). Lawrence, J. P., Eiber, Harwood and Balletta, JJ., concur.